**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ELENA VILARREAL, DESPINA ATSAVES, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 12 C 8744 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| THOMAS J. DART, Sheriff of ) | |
| Cook County, Illinois, ) | |
| COOK COUNTY, ILLINOIS, a Municipal ) | |
| Corporation and Body Politic, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Plaintiffs Elena Villarreal and Despina Atsaves, two female Cook County Sheriff's

Office employees working in the Cook County Department of Corrections ("CCDOC"), believed

that they suffered discrimination on the job and sued Defendant Thomas Dart, the Sheriff of

Cook County, alleging discrimination and retaliation in violation of Title VII of the Civil Rights

Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and Defendant Cook County as his

indemnitor. Defendants ask for summary judgment on all of Plaintiffs' claims. The Court grants

Defendants' summary judgment motion [89] because the Court finds first, that no reasonable

factfinder could find that Villarreal or Atsaves experienced a hostile work environment based on

a characteristic protected by Title VII or that they experienced a materially adverse employment

action motivated by a protected characteristic. Additionally, the Court finds that Villarreal and

Atsaves waived their retaliation claims. As a final matter, their indemnity claim does not survive

without an underlying discrimination or retaliation claim.

# BACKGROUND[1]

## I.     Elena Villarreal

Villarreal is a female correctional officer working for the Cook County Sheriff's Office and assigned to CCDOC.  In 2009, while working as a correctional officer, she passed the sergeant exam.  She received a promotion to sergeant in August 2011.  Between July 2009 and April 2011, Villarreal alleges that she was subjected to various forms of discrimination, harassment, and retaliation.

Villarreal's CCDOC supervisor, Captain Henry Page, belittled Villarreal on a regular, almost daily, basis from July 2009 to January 2011.[2]  Captain Page harassed and demeaned her at roll call, on assignment, and in his office.  Captain Page, a male, claims to have "spoke[n] sternly to both male and female subordinates when issuing discipline, in an effort to show the seriousness of the violation of the rules and regulations of CCDOC."  Doc. 96 at 11 (quoting Doc. 91-7 ¶ 6).  In response to Captain Page's behavior, Villarreal submitted multiple grievances complaining about and challenging his actions.  She filed so many grievances that Superintendent Martha Salazar, Captain Page's supervisor, directed Villarreal to stop filing them. Villarreal never received a written disciplinary charge when Captain Page yelled at her, but she claims that Captain Page's actions caused her to be frustrated, demoralized, anxious, upset, distressed, sad, and want to not go to work.

---

[1]     The facts set forth in this section are derived from the parties' Agreed Statement of Facts and Agreed Supplemental Statement of Fact to the extent they comport with this Court's standing order and are taken in the light most favorable to Villarreal and Atsaves, the non-movants.  The Court has included in this background section only those portions of the statements and responses that are appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment.

[2]     The agreed statement of facts does not indicate the time period that the verbal harassment occurred, but the record evidence suggests that the harassment stretched from July 2009 through January 2011, when Captain Page left Villarreal's division, Division II.  *See* Doc. 91-7 ¶ 2.

Whenever Villarreal received a written disciplinary charge, or a "write-up," she filed a grievance challenging it. She prevailed every time she filed a grievance arising out of a "write-up," except on one occasion when a disciplinary charge was reduced to a verbal reprimand that Villarreal described as a "slap on the hand," Doc. 91 ¶ 32. Villarreal never lost any pay and the write-ups did not interfere with her promotion to sergeant.

Between July 2009 and the end of April 2011, Villarreal received 47 lunch premiums. A lunch premium is a credit that a correctional employee receives for working his or her shift without taking the shift's normal one-hour lunch break because of operational necessity. The recipient of the lunch premium can select either pay for the worked lunch hour at a time-and-a-half rate or an hour of compensatory time. Villarreal testified that there was favoritism toward other female officers regarding lunch premiums and identified two female officers who received more lunch premiums than she and three male officers who received fewer lunch premiums than she. CCDOC records show that, in Villarreal's division, Division II, the seven female officers received 590 lunch premiums and the eight male officers received 555 during the relevant time period. Villarreal has not identified an instance when she worked over lunch but did not receive a lunch premium.

Cross-watching is CCDOC's practice of assigning an officer to watch two tiers of inmates alone without a partner. Cross-watching was permitted in Villarreal's division when operational needs arose. Villarreal cross-watched on multiple occasions. [3] Male and female officers had to cross-watch, and Villarreal's partner during cross-watching was Officer Tom Ryan, a male officer.

_____

[3]    The Agreed Statement of Facts (Doc. 91) does not contain information or citations to evidence that describe the dates that Villarreal was assigned to cross-watch or the number of times that she cross-watched. *See* Doc. 91 ¶¶ 22–30.

Villarreal also testified that on three different occasions, she was assigned to monitor the recreation yard and the 300 inmates in it, apparently a different assignment than the one she expected to have on those dates. She remembers that Atsaves was assigned with her once, but she is not sure if a third employee was also assigned. "Nothing bad happened" on any of those three assignments, but Villarreal testified that "it [was] a frightening situation." Doc. 91 ¶ 34; Doc. 91-3 at 97:19–22.

## II. Despina Atsaves

Atsaves, who is also female, works at CCDOC with Villarreal. She was a correctional sergeant between 2007 and 2015 and is now a lieutenant. She passed the lieutenant's exam at least twice, in 2009 and 2011, but did not receive a promotion to lieutenant until April 2015. Between July 2009 and April 2011, Atsaves alleges that she was subjected to various forms of discrimination, harassment, and retaliation as well.

CCDOC sergeants monitor multiple buildings rather than multiple tiers within one building. This is allowed under the rules and regulations for Atsaves' division. Atsaves cross-watched only two times and recalls other sergeants cross-watching as well.

When CCDOC was shorthanded, Atsaves often received mandated overtime when she came off a shift; sometimes she would not find out until later, when she would receive a call at home to come in to work for overtime on another shift. She worked overtime approximately 40 times, which she claims is comparable to the overtime work of the other sergeants. But three times between 2009 and 2010, when a sergeant was needed for overtime, another female sergeant senior to Atsaves, Sergeant Nancy Ochoa, was offered the overtime before Atsaves.

Between July 2009 and January 2011, Atsaves received at least seventeen written disciplinary charges from Captain Page. She grieved the write-ups and they were removed on or

before January 21, 2012. Atsaves never lost any pay due to the write-ups, but she states that she believes that the write-ups prevented her from making lieutenant in the 2009 to 2011 promotion cycle.[4] During the 2009 to 2011 cycle, she passed the lieutenant exam and was on the list of sergeants qualified for promotion to lieutenant, but did not receive the promotion. Atsaves thinks this happened for two reasons. First, she believes that her personnel file contained seven or eight disciplinary write-ups at the time of her oral examination for promotion to lieutenant and that those write-ups directly impacted her candidacy for promotion. Second, she thinks the personnel who interviewed and evaluated candidates for lieutenant may have had contact with her superiors, like Captain Page, because the interviewers are familiar with the candidate's supervisors and superiors.

Atsaves also believes that this lawsuit negatively influenced her examination ranking for the 2011 to 2012 cycle, but admits she does not have any information to support her belief. Still, she says she was more than qualified to be promoted, and she made the qualification list for the 2011 to 2012 cycle. In order to make the qualification list, CCDOC compiled a score for the candidates based on attendance, operational questions, personal attribute questions, in-service training, and a writing sample. Additionally, CCDOC considered each candidate's disciplinary history. If a candidate had disciplinary and attendance histories that prevented him or her from being qualified for promotion, that candidate was identified as "Not Qualified" on the list of potential sergeant candidates for promotion. Finally, there was a panel interview as a component of the promotion process, in which Atsaves participated. The panel did not question Atsaves

---

[4]     The parties' filings describe two different promotion periods for sergeants seeking to become lieutenant—a promotion period after the 2009 test (the "2009 to 2011 cycle"), *see* Doc. 91 ¶ 71, and a promotion period after a 2011 posting seeking applicants (the "2011 to 2012 cycle"), *see* Doc. 91 ¶ 43. The parties' agreed statement of facts (Doc. 91) and the parties' briefing (Docs. 90, 96, 97) often is imprecise as to whether facts and arguments concern the 2009 to 2011 cycle or the 2011 to2012 cycle, but the Court identifies what cycle it addresses when the agreed statement of facts and documents allow.

about any pending discipline, and Mario Reyes, who was the CCDOC Superintendent at the time and is now its Assistant Executive Director, testified that Atsaves' disciplinary history was not a factor considered by the panel. After totaling the scores, Atsaves ranked 54th out of 57 candidates in the 2011 to 2012 cycle. Her total score was 50.33, while the highest candidate's score was 89.67. Reyes testified that Atsaves was not promoted to lieutenant for the 2011 to 2012 cycle because of her low total score. Atsaves knows of other female sergeants who were promoted to lieutenant.

On April 20, 2011, Villarreal and Atsaves each filed a charge with the EEOC based on the above facts. Villarreal indicated she was the subject of discrimination based on her sex and national origin,[5] while Atsaves claimed she was the subject of discrimination based on her sex and retaliation.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue

---

[5]     The complaint also contains a preamble that Dart was liable for discrimination based on Villarreal's national origin, Doc. 1 ¶ 2, but Plaintiffs make clear that "Plaintiffs have not pleaded or complained of National Origin-based employment discrimination or harassment in any form in this lawsuit." Doc. 108 at 1.

for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

### I.      Title VII Discrimination Claims

Although not well articulated, Villarreal and Atsaves allege discrimination under hostile work environment and disparate treatment theories, and the Court addresses both theories in turn.

#### A.      Hostile Work Environment

Villarreal and Atsaves allege that Captain Page harassed them and created a hostile work environment. To succeed on a Title VII hostile work environment claim, a plaintiff must show: (1) that "her work environment was both objectively and subjectively offensive," (2) that "the harassment was based on her" protected characteristic, (3) that "the conduct was either severe or pervasive," and (4) that "there is a basis for employer liability." *Vance v. Ball State Univ.*, 646 F.3d 461, 469 (7th Cir.2011). Defendants argue that Plaintiffs cannot create a material issue of fact as to any element of their hostile work environment claims. The Court addresses only whether any alleged harassment was based on Villarreal's and Atsaves' sex, because even assuming all the other elements are met, the Court finds that Plaintiffs have failed to raise a genuine dispute of material fact as to this element.

To determine whether harassment is based on sex, "[t]he critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S.

75, 80, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998) (citation omitted) (internal quotation marks omitted). One avenue to demonstrate that harassment is based on sex is to provide evidence of discrepancies in how the alleged harasser treats members of each sex in a mixed-sex workplace. *Smith v. Sheahan*, 189 F.3d 529, 533 (7th Cir. 1999) (citation omitted). A jury can also determine that hostility is based on sex from the nature of the hostility, including if the alleged harasser uses language that is explicitly gendered or sexually charged. *Id.* (citations omitted).

Plaintiffs argue first that Captain Page is male and singled them out. But being singled out by a male, standing alone, is not sexual harassment. *See Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 339 (7th Cir. 2002) ("Patton has presented no evidence to show that Coleman and Gilbert's treatment of her was based on her race or gender—she argues instead that the 'abusive conduct was purely personal.' This is fatal to her claim."). Plaintiffs admit that Captain Page said he "spoke sternly to both male and female subordinates when issuing discipline," Doc. 96 at 11 (quoting Doc. 91-7 ¶ 6), which suggests that Captain Page was a bully to those on both sides of the gender divide, and Plaintiffs have not provided evidence to the contrary. *Compare Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 546 (7th Cir. 2011) (co-worker behaved poorly with everyone, not just members of protected class, and there was no evidence that co-worker was singling out protected class members), *with Smith*, 189 F.3d at 533 (plaintiff created issue of fact as to whether male co-worker's animosities were based on sex by introducing affidavits from six female co-workers illustrating that male co-worker had history of offensive actions with other female co-workers), *and Kampmier v. Emeritus Corp.*, 472 F.3d 930, 940–41 (7th Cir. 2007) (plaintiff introduced evidence rebutting defense that harasser was "equal opportunity harasser" by presenting facts that harassment of women was much more severe than harassment of men). There is also no basis to find that Captain Page's words targeted women or were

sexually charged (or were severe, pervasive, or offensive), when Plaintiffs only supply vague,
non-gendered descriptions of what Captain Page said to Villarreal instead of the required specific
examples. *See Jackson v. County of Racine*, 474 F.3d 493, 499–500 (7th Cir. 2007) (detailed
testimony provides the "necessary specifics" to prove a hostile work environment but
complaining of a hostile work environment "without providing any specific examples" does not);
*Gabrielle M. v. Park Forest-Chicago Heights, Ill. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir.
2003) (plaintiff could not avoid summary judgment in Title IX sexual harassment lawsuit with
general allegations that classmate "'bothered' her by doing 'nasty stuff'").

Additionally, Plaintiffs provide no evidence that being a woman had any effect on
Atsaves' experience at CCDOC. Atsaves' anecdotes about work and unfair treatment only
compare herself to other women who received better treatment than she did rather than making a
comparison to other men and demonstrating less favorable treatment on the basis of her sex.
Plaintiffs cannot prove that Atsaves was discriminated against by virtue of her sex when she
limits her evidence to show only that she was treated poorly as compared to her female co-
workers. *See Thomas v. City of Chicago*, No. 09 C 6705, 2011 WL 3756454, at *5 (N.D. Ill.
Aug. 25, 2011) ("[A]ccording to Thomas, Murphy treated her worse than other women, which
suggests that Murphy did not target Thomas because of her gender.").

Plaintiffs' evidence in support of Villarreal's claim is no better. The fact that Atsaves
was the sergeant that accompanied Villarreal on the recreation yard assignment is simply not
enough, by itself, to convince a jury that Villarreal's assignment was based on her gender.
Villarreal testified that she was receiving the same assignments as other male officers and was
the only female being treated as a male officer, which does not suggest harassment because of
gender. *See id.*; *see also Ripberger v. Corizon, Inc.*, 773 F.3d 871, 877 (7th Cir. 2014) (higher

percentage of female hires than male hires did not support plaintiff's contention that males were given preferential treatment in hiring decisions).  Plaintiffs have failed to present evidence sufficient to create a factual dispute as to whether they faced any alleged harassment because of their sex, and as a result, the Court grants summary judgment in favor of Dart on Plaintiffs' hostile work environment claims.

## B. Disparate Treatment

To defeat summary judgment on their disparate treatment claims, Villarreal and Atsaves each must show that she was subjected to intentional discrimination based on her sex.  *Chaib v. Indiana*, 744 F.3d 974, 981 (7th Cir. 2014).  That is, a plaintiff must prove a discriminatory motive or intent behind a materially adverse employment action.  *Nichols v. S. Ill. Univ.- Edwardsville*, 510 F.3d 772, 779, 781 (7th Cir. 2007).  A discrimination plaintiff can demonstrate disparate treatment through the direct or indirect method of proof.  *See Chaib*, 744 F.3d at 981.  Villarreal and Atsaves seek to prove their disparate treatment claims under the direct method.  Doc. 96 at 10–11.[6]

Under the direct method, a plaintiff can prove disparate treatment using either direct or circumstantial evidence.  *Chaib*, 744 F.3d at 982.  Direct evidence is usually an admission that the adverse action was intentional discrimination.  *Id.*  Plaintiffs admit that

---

[6]     Plaintiffs' summary judgment brief confusingly states "SUMMARY JUDGMENT BECAUSE GENUINE ISSUES OF MATERIAL FACT PERSIST AS TO PLAINTIFFS VILLARREAL AND ATSAVES CLAIMS OF DISCRIMINATION AND RETALIATION UNDER EITHER THE DIRECT OR INDIRECT METHOD."  Doc. 96 at 10.  The body of the argument, however, asserts that Plaintiffs can prove their disparate treatment claims under the direct method and the section regarding the indirect method only provides argument on their hostile work environment claims.  The Court therefore addresses the disparate treatment claims only under the direct method.  But even under the indirect method, Plaintiffs' disparate treatment claims would fail, because they did not present any evidence at summary judgment that they were treated less favorably than similarly situated correctional officers or sergeants who were male.  *See Kampmier*, 472 F.3d at 939 (without similarly situated comparator, a plaintiff cannot establish a *prima facie* Title VII discrimination case under the indirect method, which terminates any further inquiry at the summary judgment stage under this method).

they do not have direct evidence but argue that circumstantial evidence supports their disparate treatment claims. When using circumstantial evidence, a plaintiff must construct a "convincing mosaic" that would permit a jury to infer intentional discrimination. *Id.* (internal quotation marks omitted). This convincing mosaic may be drawn from categories of circumstantial evidence such as:

> (1) "suspicious timing, ambiguous statements oral or written, and other bits and pieces from which an inference" of discrimination could be drawn; (2) "evidence, but not necessarily rigorous statistical evidence, that similarly situated employees were treated differently"; or (3) "evidence that the employer offered a pretextual reason for an adverse employment action."

*Id.* (quoting *Perez v. Thorntons, Inc.*, 731 F.3d 699, 711 (7th Cir. 2013)). Defendants argue that Plaintiffs' disparate treatment claims fail because Villarreal and Atsaves did not suffer a materially adverse employment action, and even assuming they did, they cannot prove that their gender was the reason for it. The Court agrees.

### 1.    Adverse Employment Actions

"A materially adverse employment action is something more disruptive than a mere inconvenience or an alteration of job responsibilities." *Nichols*, 510 F.3d at 780 (citation omitted) (internal quotation marks omitted). Although materially adverse employment actions go beyond quantifiable losses, not everything that causes an employee to be unhappy at work is actionable as an adverse action. *Id.* If that were the case, anything that an employee did not like could form the basis of a discrimination suit. *Id.* There are three categories of materially adverse employment actions:

> (1) cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, including termination; (2) cases in which a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing her from using her skills and experience, so that the skills are likely to atrophy and her career is

likely to be stunted; and (3) cases in which the employee is not moved to a different job or the skill requirements of her present job altered, but the conditions in which she works are changed in a way that subjects her to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment.

*Id.*

### a. Disciplinary Write-ups

The Court finds that a jury could determine that the disciplinary write-ups Atsaves received from Captain Page could qualify as adverse employment actions against her.[7] The disciplinary letters could qualify as adverse employment actions only if they were accompanied by a change in the terms or conditions of Atsaves' employment, like a job loss or demotion. *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005) (citation omitted). Plaintiffs present evidence that the write-ups may have changed the conditions of Atsaves' employment by preventing her from being promoted to lieutenant in an earlier promotion cycle, because the write-ups may have been in her file at the time she was being considered for promotion in the 2009 to 2011 cycle.[8] There is evidence that the write-ups were actually in her file at the time of her January 2011 oral interview for the 2009 to 2011 cycle, because she testified they were not removed until after her grievance hearing, which was after her 2009 to 2011 cycle interview. *See*

---

[7] Villarreal suffered no financial loss or employment opportunity because of the write-ups, and Plaintiffs admit that there is no dispute of fact as to whether the write-ups were an adverse employment action for her. *See* Doc. 96. at 4.

[8] Defendants point out that Atsaves did not allege in the complaint or her EEOC charge that she was discriminated against based on a failure to promote. *See* Doc. 90 at 11. It is clear that Atsaves is not bringing a failure to promote claim. She is simply alleging that the written discipline negatively impacted her candidacy for lieutenant and resulted in a change of the conditions of her employment sufficient for a materially adverse employment action. *See* Doc. 96 at 10 ("Whether the history of disciplinary write-ups reflected poorly on Plaintiff Atsaves so as to deplete her scores in subjective areas . . . that is an issue of fact for the jury to determine."). Even if Atsaves intended to and could have brought a failure to promote claim for any missed promotion during the 2009 to 2011 cycle or the 2011 to 2012 cycle, she has waived any such claim by not addressing it at summary judgment after it was challenged. *See Hebert v. JPMorgan Chase Bank, N.A.*, No. 13 C 4358, 2016 WL 245570, at *3 (N.D. Ill. Jan. 21, 2016).

Doc. 91 ¶ 38; Doc. 91-4 at 10:20–11:17. While there is undisputed evidence that all discipline was removed from Atsaves' file by January 21, 2012, *see* Doc. 91 ¶ 65; Doc. 91-8, there is a factual dispute whether the write-ups were in her file in the first week of 2011. Although Atsaves admitted she had no factual support for her speculation that Captain Page influenced her evaluators, the Court finds that there is sufficient foundation for Atsaves' belief that the write-ups actually impacted her employment opportunities and any further scrutiny of her suspicions is a credibility issue for the jury where an inference can be drawn connecting her negative disciplinary record to a denied promotion.[9]

### b. Assignments

While Villarreal's assignments to guard the recreation yard are a closer call, the Court also finds that Plaintiffs presented sufficient evidence to create an issue of fact as to whether the three assignments were dangerous or otherwise negative enough to form an adverse employment action. Plaintiffs have produced evidence that could convince a jury that the assignments were objectively intolerable. *See Tart v. Ill. Power Co.*, 366 F.3d 461, 475 (7th Cir. 2004) (plaintiffs raised adverse employment actions within third category where reassignments to worsened working environments were not just subjectively detrimental). There is sufficient evidence to create a reasonable inference in favor of Villarreal that her fears were reasonable and she was in

---

[9]     Defendants failed to provide evidence that the write-ups were not considered for the 2009 to 2011 cycle. Atsaves describes the 2009 to 2011cycle interviews to support her claim, but Defendants rely on the 2011 to 2012 cycle interviews to defend against her claim. *Compare* Doc. 91 ¶¶ 38–39, *and* Doc. 91-4 at 11:18–12:12 (describing January 2011 panel interview composed of Superintendents Holmes and Jackson and a civilian for "2009 cycle" and "2009 examination"), *with* Doc. 91 ¶¶ 37, 42–51, *and* Doc. 91-10 (describing June 14, 2011 panel interview with panel of Reyes, "D. Boecker," and "D. Gomez" for "2011 CCDOC Promotion Process" and "2012 Lieutenant Promotional Exam Scoring Results"). Defendants' evidence that Atsaves' write-ups and disciplinary record were not considered at her oral interview and did not impact her promotion rankings clearly concerns the 2011 to 2012 cycle when Reyes sat on Atsaves' panel interview on June 14, 2011 after a 2011 promotional posting. *See* Tab 91-10 (attachments to affidavit). While Defendants' highlighted facts would be relevant to Plaintiffs' argument that Atsaves was denied a promotion in the 2011 to 2012 cycle because of this lawsuit (her retaliation claim), they have no bearing on Atsaves' discrimination claim.

an objectively dangerous situation when she was guarding 300 inmates with limited support. *See Sutton v. Ill. Dep't of Transp.*, No. 99 C 0265, 2003 WL 1719996, at *2–3 (N.D. Ill. Mar. 31, 2003) (in other circumstances, an assignment that puts a plaintiff at undue physical risk could constitute actionable discrimination); *Guzman v. City of New York*, No. 06-CV-5832(KAM)(LB), 2010 WL 4174622, at *19 (E.D.N.Y. Sept. 30, 2010) (reducing inmate contact could result in materially safer working conditions). In this case, because a jury could reasonably determine that Villarreal's assignments to the recreation yard created an objective risk of harm, Defendants cannot obtain judgment as a matter of law by merely arguing "no harm, no foul," and making factual arguments unsupported by the record. *See Gbur v. City of Harvey, Ill.*, 835 F. Supp. 2d 600, 635 (N.D. Ill. 2011) (defendants could not defend retaliation claim by arguing that the retaliatory assignment "wasn't a big deal because it lasted just one shift").

### c. Lunch Premiums, Overtime, and Cross-watching

The Court finds, however, that Villarreal cannot establish a genuine issue of material fact as to whether she suffered an adverse employment action regarding the lunch premiums. Villarreal failed to present any evidence where she was eligible for but did not receive a lunch premium or experienced a material difference in lunch premiums as compared to other employees.[10] Although not explicitly detailed in the agreed statement of facts, the limited record evidence describes the lunch premium count of only one other correctional officer on Villarreal's 3PM to 11PM shift—Officer Kimberly Hofsteadter, a female, received 50 lunch premiums between July 2009 and April 2011, or only three more than Villarreal did. *See* Doc. 91-9 at 2, 6–9. Analyzing the distribution of lunch premiums on Villarreal's shift and recognizing that the distributions were shift-based, the Court does not find that the difference of three lunch

---

[10] Atsaves did not substantively argue that she suffered any adverse employment action as to lunch premiums, *see* Doc. 96 at 8–10, and the statement of facts states that she is not pursuing a discrimination theory based on lunch premiums, Doc. 91 ¶ 62.

premiums between Villarreal and Officer Hofsteadter is a material difference. Any issue
Villarreal had concerning lunch premiums therefore cannot rise to the level of a materially
adverse employment action. *See Ziccarelli v. Dart*, 581 F. App'x 563, 566–67 (7th Cir. 2014)
(evidence regarding lunch premiums was insufficient to show adverse action where plaintiff only
presented generalized evidence of lunch premium distribution, plaintiff's evidence did not create
inference of adverse treatment where chosen comparators did not work on same shifts as
plaintiff, and six-premium gap over two years was not a material difference in lunch premiums).

Similarly, Atsaves failed to produce any evidence that she was denied opportunities to
work overtime shifts or that she received less overtime than others, meaning she cannot claim
this as a materially adverse employment action. *See Bridgeforth v. Cook County*, No. 14 C 4443,
2015 WL 5951545, at *4 (N.D. Ill. Oct. 13, 2015) ("Bridgeforth adduces no evidence as to how
much less overtime she worked or when she declined to work overtime, leaving the court with no
basis to evaluate the degree to which her compensation was affected."). In the same vein,
because both Villarreal and Atsaves admit that cross-watching was a part of their normal duties
as correctional employees, their unhappiness with their normal job duties is not enough to create
an issue of fact regarding an adverse employment action. *See Nagle v. Vill. of Calumet Park*,
554 F.3d 1106, 1117 (7th Cir. 2009) (assignments not adverse employment actions when other
employees also perform them); *Ziccarelli*, 581 F. App'x 563 at 567 (plaintiff's evidence did not
create issue of fact as to cross-watching, because "subjective impressions about the desirability
of particular work assignments, without more, are insufficient" to established adverse
employment action).

### d. Verbal Threats and Intimidation

Villarreal fares no better basing an adverse employment action on Captain Page's threats and intimidation. Villarreal admitted that she suffered no financial loss or job change because of Captain Page's threats and intimidation. Although the verbal harassment made Villarreal not want to work, she continued to work and received a promotion. *Cf. E.E.O.C. v. Univ. of Chicago Hosps.*, 276 F.3d 326, 331 (7th Cir. 2002) (not being fired is not fatal to a theory of constructive discharge but employee must see diminished opportunities). Additionally, Villarreal failed to produce evidence sufficient to demonstrate a hostile work environment created by Captain Page's harassment. As noted, Villarreal did not provide details about what Captain Page said to her and thus, there is no evidence that would allow a jury to find that Captain Page's words were objectively offensive. *See Jackson*, 474 F.3d at 499 ("In order to establish a *prima facie* case under this theory, a plaintiff must show, among other things, that she has been subjected to 'behavior so objectively offensive as to alter the conditions of [her] employment.'" (alteration in original) (quoting *Oncale*, 523 U.S. at 81)); *Bridgeforth*, 2015 WL 5951545, at *7 ("Accordingly, because the acts of which Bridgeforth complains are not objectively severe or pervasive, they cannot support a hostile work environment claim. And with no hostile work environment claim, Bridgeforth has no materially adverse employment action, which means that she has no viable Title VII claim."). Without a hostile environment claim, Villarreal cannot establish an adverse employment action based on Captain Page's verbal assaults.

### 2. Proof of Discriminatory Intent

Although both Villarreal and Atsaves have demonstrated a factual dispute regarding a materially adverse employment action, they have failed to provide evidence of discriminatory

intent. This is fatal to their disparate treatment claims. By using only the alleged adverse employment actions themselves as circumstantial evidence, Villarreal and Atsaves fail to carry their burden at the summary judgment stage.

Standing alone, the employment actions of which Plaintiffs complain do not suggest discriminatory animus. Captain Page's targeting of Villarreal and Atsaves with unsafe assignments and written disciplinary letters certainly demonstrates that he was antagonistic toward them, but Plaintiffs fall short in showing that his antagonism was motivated by their gender. *See Johnson v. Koppers, Inc.*, 726 F.3d 910, 915 (7th Cir. 2013) (without evidence that animosity was motivated by discriminatory bias, plaintiff's speculation and conjecture were insufficient to survive summary judgment); *Good v. Univ. of Chicago Med. Ctr.*, 673 F.3d 670, 675 (7th Cir. 2012) (finding that guesswork and speculation regarding discriminatory motive are insufficient to defeat summary judgment). Villarreal and Atsaves have not produced evidence from which the Court can infer that Captain Page's actions were motivated by gender animus, such as his own words or actions toward the male correctional employees that would suggest a discriminatory animus toward women.[11] Rather, the evidence suggests favoritism toward other female correctional employees in both perks and assignments. Additionally, Plaintiffs have no evidence showing a pretextual basis for their treatment. *See Teruggi v. CIT Grp./Capital Fin., Inc.*, 709 F.3d 654, 661 (7th Cir. 2013) ("[N]one of Teruggi's evidence shows that Cashman's stated reason for Teruggi's discharge was a lie."). Plaintiffs have failed to present the type of

---

[11] To the extent the record evidence supporting the statement of facts suggests that males were not assigned alone or with limited backup to the recreation yard, Doc. 91-2 at 96:15–18, the Court does not find that the assignment of two females, Villarreal and Atsaves, to the recreation yard creates an inference that the assignments, even if dangerous, were motivated by their sex. Although Villarreal testified that no male was assigned alone or with limited backup to the recreation yard, *id.*, she also testified that Atsaves was her backup only one time and that Captain Page, a male, and Lieutenant Clemons, another male, were her backup another time before a shift change. *See* Doc. 91-3 at 98:3–15. Even with a dispute of fact as to whether both men and women receive the potentially dangerous recreation yard assignments, Plaintiffs have failed to present evidence sufficient to raise an inference of systematically better treatment of men.

circumstantial evidence required to create a convincing mosaic of discrimination—suspicious timing, male co-workers who experienced systematically better treatment, any treatment from a decisionmaker that would show intentional discrimination, or pretextual explanations for an adverse employment action. *Compare Chaib*, 744 F.3d at 984–85 (plaintiff's highlighting of adverse employment actions, alone, was insufficient to show discrimination), *with Deets v. Massman Constr. Co.*, 811 F.3d 978, 983 (7th Cir. 2016) (supervisors' statements about layoff, timing of layoff, hiring of racial minority, and pretextual explanation of layoff were the 'scraps of circumstantial evidence' sufficient to allow trier of fact to conclude that discrimination more likely than not in reverse race discrimination claim). In the end, Villarreal's and Atsaves' circumstantial evidence boils down to their exasperation with Captain Page and their treatment at CCDOC, which is not the type of evidence that would allow a jury to infer intentional discrimination. *Bluford v. Swift Transp.*, No. 11 C 6932, 2014 WL 4637158, at *9 (N.D. Ill. Sept. 15, 2014) (frustration over employment conditions does not rise to the level to support a claim for discriminatory intent). Therefore, the Court grants summary judgment for Dart on Plaintiffs' disparate treatment claims.

## II.     Retaliation Claims

Villarreal and Atsaves allege that CCDOC retaliated against them after both women engaged in activity protected by Title VII. Title VII prohibits employer actions that discriminate against an employee because she opposed practices that Title VII forbids or because she has charged, testified, assisted, or participated in a Title VII proceeding, hearing, or investigation. *Metzger v. Ill. State Police*, 519 F.3d 677, 681 (7th Cir. 2008) (quoting 42 U.S.C. § 2000e–3(a)). A plaintiff alleging retaliation can prove her case either by the direct or indirect method of proof. *Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 485 (7th Cir. 2015). Under the direct

method, a plaintiff may show with direct or circumstantial evidence "(1) that [s]he engaged in activity protected by the statute; (2) that [her] employer took an adverse employment action against [her]; and (3) that there is a causal connection between the plaintiff's protected activity and the adverse employment action." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). Under the indirect method, a plaintiff must establish a *prima facie* case of retaliation by showing that "(1) she engaged in statutorily protected activity; (2) she met her employer's legitimate expectations; (3) she suffered an adverse action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Metzger*, 519 F.3d at 681. If the plaintiff establishes a *prima facie* case, the defendant has the burden to show a non-discriminatory reason for the employment action. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). If the employer does so, then the plaintiff must demonstrate that the employer's proffered reason is pretextual. *Id.*

Neither Villarreal nor Atsaves attempt to support their retaliation claims under either the direct or indirect methods of proof. A plaintiff who fails to address a claim challenged at the summary judgment stage waives that claim. *See Weber v. Univs. Research Ass'n*, 621 F.3d 589, 592–93 (7th Cir. 2010) (plaintiff who did not address direct method of proving retaliation waived proof under that method); *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 407–08 (7th Cir. 2007) (incorporating by reference well-developed retaliation argument into undeveloped discrimination argument is not enough to develop discrimination argument even with overlaps in proofs between two claims); *Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1002 n.1 (7th Cir.2001) (undeveloped and unsupported arguments are waived). Plaintiffs' brief acknowledges that their retaliation claims were challenged, but they do not argue that the law or evidence supports a

retaliation claim, and, at best, they devote one sentence to the claims. *See* Doc. 96 at 11. They have thus waived their Title VII retaliation claims.

Even had they not waived these claims, summary judgment for Dart would be proper on both Plaintiffs' retaliation claims. Under the direct method, Plaintiffs' claims fail because there is insufficient evidence of a causal connection between any alleged protected activity and any adverse employment action. *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 565 (7th Cir. 2015). Plaintiffs affirmatively provide no temporal connection between any protected activity and any adverse employment action. Additionally, after a search of the record, any dates revealed of protected activity or adverse action show that months passed between the two events,[12] *see Tomanovich*, 457 F.3d at 665 (connection of four months is not suspicious timing); *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 919 (7th Cir. 2000) (three months, without more, cannot support a causal connection); or, completely fatal to their claims, Plaintiffs' protected activity occurred ***after*** the adverse employment actions.[13] Under the indirect method of proof, Plaintiffs' retaliation claims fail because they did not identify a similarly situated comparator who did not engage in protected activity. *See Carothers v. County of Cook*, 808 F.3d 1140, 1152 (7th Cir. 2015). The Court therefore grants summary judgment for Dart on Villarreal's and Atsaves' retaliation claims.

## III.    Indemnification

Defendants also seek summary judgment on Villarreal's and Atsaves' claim for indemnification against Cook County. Because the basis for this claim rests on a judgment

---

[12]    Atsaves filed her April 2011 EEOC charge three months before her July 2011 scores came out and an unknown number of months before she found out she did not receive the promotion to lieutenant.

[13]    Villarreal filed her EEOC charge in April 2011, which is after the relevant time period of the adverse actions she experienced. Atsaves filed this lawsuit in October 2012, which was after her June 2011 promotional interview and July 2011 qualification scores for the 2011 to 2012 cycle.

against Dart and the Court has found in Dart's favor on all claims asserted against him, the Court also grants summary judgment for Cook County on the indemnification claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment [89] is granted. The clerk is directed to enter judgment for Defendants. This case is terminated.

Dated: March 29, 2016

_____
SARA L. ELLIS
United States District Judge